1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Manuel L., Jr.,                              No. CV-24-00225-PHX-SHD

10                   Plaintiff,                    **ORDER**

11   v.

12   Commissioner    of    Social    Security
     Administration,

13

14                   Defendant.

15          Claimant Manuel L., Jr.,[1] seeks review of the Social Security Administration

16   Commissioner's ("SSA") final decision denying him disability insurance benefits.  The

17   Administrative Law Judge's ("ALJ") decision is **vacated and remanded** for further

18   administrative proceedings.

19   **I.    BACKGROUND**

20          Claimant protectively filed applications for disability insurance benefits on

21   November 12, 2020 and December 1, 2020, respectively, and filed an application for

22   child's insurance benefits on August 4, 2021.  (Administrative Record ("AR") 18.)

23          In the ALJ's decision, the ALJ determined Claimant had the severe impairments of

24   status post traumatic brain injury from fall, hearing loss, blindness in left eye,

25   neurocognitive disorder, adjustment disorder with mixed anxiety and depressed mood,

26   major depressive disorder, and generalized anxiety disorder.  (AR 18.)  The ALJ evaluated

27   the medical evidence and testimony and ultimately concluded that Claimant was not

28   _____

     [1]     As a matter of practice, the Court refers to Claimant as such and, at most, by his
     first name and last initial to protect his privacy.

1  disabled.  (AR 25–32.)  In doing so, the ALJ determined that Claimant had the Residual

2  Functional Capacity ("RFC") to perform medium work with certain limitations and to

3  "understand and remember simple instructions, carry out simple instructions, follow simple

4  work-like procedures, make simple work-related decisions," and "perform simple work at

5  a consistent pace."  (AR 25.)  Based on the RFC formulation and the testimony of the

6  Vocational Expert ("VE") at the hearing, the ALJ found that Claimant could perform the

7  jobs of a hand packager, bagger, or counter supply worker, such that he was not under a

8  disability as defined in the Social Security Act (the "Act").  (AR 31–32.)

9      The ALJ thus denied Claimant's claim (AR 33), and the Appeals Council denied his

10  request for review (AR 1).  Claimant then appealed to this Court.

## II.    LEGAL STANDARD

12      The Court reviews only those issues raised by the party challenging the decision.

13  *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  The Court may set aside SSA's

14  disability determination only if it is not supported by substantial evidence or is based on

15  legal error.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is

16  more than a mere scintilla but less than a preponderance" of evidence and is such that "a

17  reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Burch v.

18  Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  To determine whether substantial evidence

19  supports a decision, the Court must consider the record as a whole.  *Id.*  But if "the evidence

20  is susceptible to more than one rational interpretation, one of which supports the ALJ's

21  decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954

22  (9th Cir. 2002).

23      To determine whether a claimant is disabled for purposes of the Act, the ALJ

24  follows a five-step process.  20 C.F.R. § 404.1520(a).  The claimant bears the burden of

25  proof on the first four steps, but the burden shifts to SSA at step five.  *Tackett v. Apfel*, 180

26  F.3d 1094, 1098 (9th Cir. 1999).  At the first step, the ALJ determines whether the claimant

27  is presently engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i). If so,

28  the claimant is not disabled, and the inquiry ends.  *Id.*  At step two, the ALJ determines

whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC—the most the claimant can do with their impairments—and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he or she determines whether the claimant can perform any other work that exists in "significant numbers in the national economy" based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v); *Tackett*, 180 F.3d at 1099. If so, the claimant is not disabled. *Id.*

## III.    DISCUSSION

Claimant raises two arguments in this appeal: (1) the ALJ erred by "rejecting the assessments from [Claimant's] treating occupational therapist" and "treating psychiatric mental health nurse practitioner" without sufficient explanation supported by substantial evidence and (2) the ALJ erred by "rejecting [Claimant's] symptom testimony" without clear and convincing reasons. (Doc. 13 at 1–2.) The Court considers each argument in turn.

### A.    Medical Opinion Evidence

Under current SSA regulations, treating or examining physician opinions are no longer entitled to deference over other medical sources. *Woods v. Kijakazi*, 32 F.4th 785, 791–92 (9th Cir. 2022). Instead, an ALJ will evaluate every medical source based on several factors, the "most important" of which are "supportability" and "consistency." *Id.* at 791 (citations omitted). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence," and consistency "means the extent to which a medical opinion is consistent . . . with the

evidence from other medical sources and nonmedical sources in the claim." *Id.* at 791–92 (alterations in original) (quotation marks omitted). An ALJ "must articulate . . . how persuasive [he or she] finds all of the medical opinions from each doctor or other source and explain how [he or she] considered the supportability and consistency factors in reaching these findings." *Id.* at 792 (first alteration in original) (citation and quotation marks omitted). "Under the revised regulations, an ALJ need only provide '*an* explanation supported by substantial evidence.'" *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (emphasis added) (quoting *Woods*, 32 F.4th at 792).

### 1. Occupational Therapist Beecham

Claimant argues that the ALJ "failed to provide a rational explanation supported by substantial evidence and failed to *articulate* and *explain* the ALJ's rationale to reject the medical opinions" offered by Occupational Therapist Beecham. (Doc. 13 at 14.) The ALJ found Beecham's[2] opinions unpersuasive because she did not "provide any explanation for [her] proposed limitations" and instead, only "referenced [her] report[s] and indicated she had no access to other medical records." (AR 30.) The ALJ also found Beecham's opinions unpersuasive as "not supported by available evidence of record to the extent assessed" and inconsistent with the record as a whole. (AR 30.)

Claimant asserts the ALJ's explanation was insufficient because (1) the ALJ should have reviewed the "underlying treatment notes for explanation and support" and (2) the ALJ did not explain why Beecham's assessment was not supported and inconsistent with the record or, specifically, "cite and connect specific records that the ALJ believed failed to support or were inconsistent with any of . . . Beecham's specific assessed limitations." (Doc. 13 at 14–15; *see also id.* at 15–16 [applying similar argument to finding related to Beecham's assessment of physical limitations].)

#### a. Supportability

The Court disagrees that the ALJ erred in discounting Beecham's opinion as

---

[2]    The parties agree that the ALJ erroneously referred to Beecham as "Ms. Christine Beeluam, MS." (AR 30; Doc. 13 at 14 n.6; Doc. 15 at 5 n.3.) Claimant does not dispute that this error was harmless. (*See generally* Doc. 16; Doc. 15 n.3 [arguing that the ALJ's "typographical error" was harmless].)

1  unsupported.  The Ninth Circuit has "accepted the discounting of a medical opinion set

2  forth in a checkbox form with little to no explanation." *Kitchen*, 82 F.4th at 740–41.  In

3  *Kitchen*, as here, the medical source offered an opinion in checkbox form as well as

4  treatment records. *Id.* at 740 (noting doctor's "mental status examinations").  Claimant's

5  citation to *Orn*, 495 F.3d 625 (9th Cir. 2007), is unpersuasive.  (Doc. 13 at 14.)  As an

6  initial matter, *Orn* was decided under the previous regulatory scheme for evaluating

7  medical opinions, which does not apply to Claimant's application for benefits. *Compare*

8  *Orn*, 495 F.3d at 631, *with Woods*, 32 F.4th at 791–92.  Even setting that aside, in *Orn*, the

9  Ninth Circuit considered whether the treating physician opinions were supported *by* the

10 record, not whether the medical source provided explanations to support his or her own

11 opinion. *Compare Orn*, 495 F.3d at 634, *with* 20 C.F.R. § 404.1520c(c)(1) ("The more . . .

12 supporting explanations *presented by a medical source* are to support his or her medical

13 opinion(s) . . . the more persuasive the medical opinions or prior administrative medical

14 finding(s) will be." (emphasis added)), *and with Woods*, 32 F.4th at 791–92

15 ("Supportability means the extent to which a medical source supports the medical opinion

16 by *explaining* the 'relevant . . . objective medical evidence.'" (emphasis added) (alteration

17 in original) (quoting 20 C.F.R. § 1520c(c)(1))).

18        Thus, the Court rejects Claimant's argument that more was required for the ALJ to

19 find Beecham's opinion unsupported.  The ALJ reasonably found that Beecham's

20 checkbox opinion providing no explanation other than a mere reference to therapy reports

21 was unpersuasive.  (AR 775–76.)  *Luft v. O'Malley*, 2024 WL 4144086, at *1 (9th Cir.

22 2024) (mem. decision) (per curiam) ("Lohmann did not adequately support her opinion.

23 Instead, she expressed it on a check-box form without providing meaningful explanation,

24 which undercuts her opinion's persuasive value." (citation omitted)); *Sarah B. v. Comm'r*

25 *of Soc. Sec.*, 2024 WL 2832887, at *3 (W.D. Wash. 2024) (ALJ's decision to discount

26 medical source opinion as unsupported was not error where the medical source "did not

27 provide a rationale for her [checkbox] opinion").

28

**b.    Consistency**

The Court nevertheless agrees with Claimant that the ALJ failed to sufficiently explain the consistency finding regarding Beecham's opinion, and thus concludes that the ALJ's finding is not supported by substantial evidence.  (Doc. 13 at 14–16.)  As with the supportability factor, an ALJ must "explain how [he or she] considered the . . . consistency factor[] for a medical source's medical opinions."  *Woods*, 32 F.4th at 792 (quoting 20 C.F.R. § 404.1520c(b)(2)).   Here, the ALJ stated in conclusory fashion that Beecham's opinions were (1) "inconsistent with other evidence in the record as a whole" and (2) "inconsistent with the overall record, including referenced exam results, treatment notes, and opinions provided by other medical sources as discussed [in this] decision."  (AR 30.) The ALJ did not identify any specific results, notes, or opinions that were inconsistent with Beecham's conclusions.   (*Id.*)    Moreover, the ALJ's unexplained determination that Beecham's conclusions were inconsistent with the medical record as a whole conflicts with the ALJ's decision to cite Beecham's treatment records as persuasive in finding that Claimant's impairments did "not result in limitations to the extent alleged."  (*See* AR 27–29 [citing Exhibits 7F, 10F, and 23F, of which Beecham's treatment records form a part].)

SSA argues that the ALJ's conclusory finding incorporated the ALJ's preceding, more detailed analysis.  (Doc. 15 at 9.)  But the ALJ's earlier discussion largely concerned the weight of Claimant's hearing testimony in light of the whole record, not resolution of medical record conflicts, and thus is not relevant.  (AR 27–29.)  Considering the ALJ's preceding analysis and "[l]ooking at *all* the pages of the ALJ's decision," (Doc. 15 at 9 [quoting *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022)]), the ALJ failed to justify his consistency finding.

SSA next argues the ALJ "referenced his earlier discussion of the evidence contradicting Ms. Beecham's opinions to explain why the opinions lacked supportability and consistency."  (Doc. 15 at 9.)  But again, the ALJ's "earlier discussion of the evidence" *included* exhibits of which Beecham's treatment records formed a part.  Here, because the ALJ did not "explain how [he] considered the . . . consistency factor[]," *Woods*, 32 F.4th

at 792, the Court is unable to determine whether the ALJ's reasoning is supported by substantial evidence. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) ("[E]ven if the ALJ had given facially legitimate reasons . . . , the complete lack of meaningful explanation gives this court nothing with which to assess its legitimacy."), *called into doubt on other grounds by Carmickle v. Comm'r*, 533 F.3d 1155, 1160 n.1 (9th Cir. 2008). *Cf. Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (holding that "boilerplate statement" that claimant's testimony was "not entirely consistent with the objective medical and other evidence for the reasons explained in this decision" was insufficient and "[did] not permit meaningful review").

### 2. Psychiatric Mental Health Nurse Practitioner McCarthy

Claimant argues that the ALJ likewise failed to adequately explain why he discounted the medical opinion of Psychiatric Mental Health Nurse Practitioner McCarthy. (Doc. 13 at 16–17.) The ALJ found that McCarthy did not include "referenced supporting evidence for the limitations to the extent assessed in the forms." (AR 31.) The ALJ reasoned that "the proposed limitations are not supported by available treatment records, the limited treatment history, exam and observation reports and results discussed in this decision, and opinions and assessments provided by other medical sources." (*Id.*)

For the reasons explained above, the ALJ did not err in determining that McCarthy's opinion was unsupported. *Kitchen*, 82 F.4th at 740–41. However, like his explanation for his ruling on consistency regarding Beecham's conclusions, the ALJ's explanation for discounting McCarthy under the consistency factor is lacking.

Although the ALJ stated that McCarthy's assessment was "not supported"[3] by other evidence in the record discussed in the ALJ's decision, the ALJ did not explain how McCarthy's assessment was undermined by other evidence in the record, or specifically

---

[3] The Court infers that the ALJ meant that McCarthy's assessment was inconsistent with other record evidence, given that the ALJ also made a supportability finding that McCarthy's opinion did not reference supporting evidence. *See Woods*, 32 F.4th at 793 n.4 ("[T]he ALJ meant only that [the] opinion was inconsistent with other record evidence. Although the ALJ's meaning here is clear from context, to avoid confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision.").

what evidence undermined it.  (AR 31.)  Again, the Court notes that the ALJ's referenced records "in this decision" included McCarthy's treatment records.  (*See* AR 29 [citing Exhibit 21F].)  It is unclear, for example, how (or even whether) the ALJ considered McCarthy's assessment inconsistent with McCarthy's own treatment records, especially where the ALJ did not appear to consider the portions of McCarthy's treatment records that are inconsistent with the ALJ's conclusion that "normal findings were reported." (*Compare* AR 29 [citing McCarthy intake records], *with* AR 1366 [discussing daily thoughts], 1367 [describing mood], 1368 [assessments], 1369 [changing medications].)  On this record, the Court cannot conclude that the ALJ's decision to discount McCarthy's opinion is supported by substantial evidence.  *See Robbins*, 466 F.3d at 884; *cf. Lambert*, 980 F.3d at 1277.

### B.    Symptom Testimony

If the ALJ finds that a claimant "presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged," and that there is "no evidence of malingering," the ALJ may "reject the claimant's testimony about the severity of [his or] her symptoms only by offering specific, clear and convincing reasons for doing so."  *Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (citation omitted).  As the Ninth Circuit has stated, "[t]his is not an easy requirement to meet:  The clear and convincing standard is the most demanding required in Social Security cases."  *Id.* (citation omitted).  "If the ALJ fails to provide specific, clear, and convincing reasons for discounting the claimant's subjective symptom testimony, then the ALJ's determination is not supported by substantial evidence." *Ferguson v. O'Malley*, 95 F.4th 1194, 1199 (9th Cir. 2024).  That said, an ALJ is "not required to believe every allegation of disabling pain."  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quotation marks omitted).  And an ALJ is not required to "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits."  *Lambert*, 980 F.3d at 1277.

Claimant argues that the ALJ did not offer sufficient reasons to discount his

symptom testimony.  (Doc. 13 at 17–22.)  Specifically, Claimant argues that the ALJ (1) "failed to reconcile [his] presentation at time-limited appointments with [his] functioning over an eight-hour workday"; (2) did not consider "improvement in the broader context of the record"; (3) improperly characterized Claimant's course of treatment and work activity; and (4) did not make a finding that a "substantial part of a typical day was spent engaged in activities inconsistent with disabling limitations" necessary for a negative credibility determination.  (*Id.* (emphases omitted).)  The Court takes each argument in turn.

### 1.    Workday Functionality

Claimant's first argument—that the ALJ "failed to reconcile Claimant's presentation at time-limited appointments with [his] functioning over an eight-hour workday"—fails. (Doc. 13 at 19 (emphasis omitted); Doc. 16 at 8.)  Claimant does not cite any authority from this Circuit that an ALJ is required to consider whether a claimant's symptoms presented or observed at a medical appointment would or would not manifest similarly or differently in the workplace.  The ALJ simply found Claimant's medical records inconsistent with his symptom testimony,[4] as the ALJ was permitted to do.  *See, e.g.*, *Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." (emphasis added)).

For example, the ALJ found Claimant's testimony of daily fatigue inconsistent with records in which Claimant denied fatigue.  (*Compare* AR 28, *with* AR 476, 538, 543, 548, 920, 1093, 1333, 1428, 1865, 1868, 1888.)  The ALJ similarly found Claimant's testimony of issues with balance and shortness of breath inconsistent with records in which Claimant was observed with a normal gait and was not observed with shortness of breath.  (*Compare* AR 28, *with* AR 676, 755.)  The ALJ similarly noted the record showed Claimant exhibited

---

[4]    Claimant cursorily argues in a footnote that the ALJ improperly made "general citations to large swaths of records" in the finding related to fatigue, because "[Claimant] did report difficulty sleeping, fatigue, or easy fatiguability." (Doc. 13 at 19 n.7.)  Claimant does not offer any argument as to why the ALJ erred in citing the records he did, and the Court will not reweigh the evidence or resolve conflicts in the medical records, which is the province of the ALJ.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021).

1   "logical thought process and within normal limits thought content," and Claimant denied

2   racing thoughts.  (*Compare* AR 28, *with* AR 652–53, 658, 663, 668, 745, 783, 799–800,

3   1325, 1330, 1334, 1367, 1383, 1909.)[5]  Claimant does not challenge these findings by the

4   ALJ as unsupported by substantial evidence; accordingly, the Court finds that the ALJ did

5   not err in discounting Claimant's testimony on this basis.

6                   **2.    Improvement**

7            Claimant next argues that the ALJ "generally noted some improvement with

8   treatment" but "was required to consider improvement in the broader context of the

9   record." (Doc. 13 at 19.)  Claimant does not identify any portion of the ALJ's decision that

10  he believes demonstrates the ALJ did *not* consider the entire record (as opposed to

11  weighing the evidence differently than Claimant hoped).  *See Ahearn v. Saul*, 988 F.3d

12  1111, 1115 (9th Cir. 2021) ("The ALJ is responsible for determining credibility, resolving

13  conflicts in medical testimony, and for resolving ambiguities." (citation omitted)).  And in

14  fact, the Court's review of the record demonstrates that Claimant's providers consistently

15  marked him as showing improvement or progress in the majority of his treatments.  (*E.g.*,

16  AR 683, 686, 696, 699–700, 702–03, 706, 762, 773–74, 790, 793, 796, 968, 971, 1448,

17  1463, 1640, 1659–60, 1663–65, 1690–92, 1694–96, 1710–11, 1742–43, 1756, 1759, 1763,

18  1765–66, 1769–72, 1775.) As Claimant does not argue that the evidence is rationally

19  subject to only his interpretation, the "court must uphold the [ALJ's] decision."  *Id.* at

20  1115–16 (alteration in original) (citation omitted).

21                  **3.    Course of Treatment and Work Activity**

22           Claimant next asserts that the ALJ's finding about Claimant's course of treatment

23  is not supported by the record.  (Doc. 13 at 20.)

24           First, Claimant argues that the ALJ erred in finding that Claimant "had not had any

25  visual or hearing treatment since 2019," and Claimant "had no treatment for

26  focus/concentration or anxiety attacks."  (Doc. 13 at 20.)  He notes his "physical and

27

28  ───────────────
    [5]    The ALJ's detailed analysis comparing Claimant's testimony with the evidence in
    the record is contrasted with the ALJ's conclusory statements concerning the consistency
    of Beecham's and McCarthy's opinions.  (*Compare* AR 27–29, *with* AR 30–31.)

occupational therapy addressed balance and other issues related to vision/hearing issues, and [he] had consistent mental health treatment with medication trials for anxiety." (*Id.*) But a plain reading of the ALJ's decision shows that the ALJ was recounting Claimant's testimony at the hearing, in which Claimant testified that he last went to a hearing specialist in "2019, 2018" and an ophthalmologist in 2019. (AR 58.) The ALJ thus did not err in this point, and this was a sufficient reason for discounting Claimant's testimony. *See Burch*, 400 F.3d at 681 ("That Burch's pain was not severe enough to motivate [her] to seek [these forms of] treatment, even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain . . . . The ALJ is permitted to consider lack of treatment in his credibility determination." (first and second alterations in original) (citation and quotation marks omitted)).

Second, Claimant argues the ALJ "did not consider any reasons for any perceived conservative treatment, especially given [providers'] notations that [Claimant] had limited awareness of some of his deficiencies." (Doc. 13 at 20.) That Claimant's treatment was conservative is a valid basis to discount his testimony. *Smartt*, 53 F.4th at 500 ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." (alteration in original) (citation omitted)). And Claimant does not offer any argument that his treatment *wasn't* conservative or how his "limited awareness of some of his deficiencies" would have any effect on a provider's independent decision-making for his course of treatment. As Claimant has not given the Court any reason to find that the evidence is rationally subject to only his interpretation, the "court must uphold the [ALJ's] decision." *Ahearn*, 988 F.3d at 1116 (alteration in original) (citation omitted).

Third, Claimant argues the ALJ erred in finding his post-injury work history "render[ed] his testimony regarding limitations . . . unpersuasive." (Doc. 13 at 20.) Claimant also argues the ALJ improperly determined Claimant met the threshold requirements for substantial gainful activity, as his monthly income was less than the income floor. (*Id.*) SSA acknowledges Claimant did not meet the threshold for substantial gainful activity, but argues the ALJ reasonably considered Claimant's work history

because "even a small improvement in his condition would mean that he could engage in substantial gainful activity after his alleged onset date and was therefore not disabled." (Doc. 15 at 20.)

The Court agrees with SSA that the ALJ reasonably considered Claimant's work history. The ALJ reasoned that Claimant's work history is inconsistent with an impairment as severe as he alleged, as the source of Claimant's injury occurred in March 2017, but he worked until March 2020, at the start of the COVID-19 pandemic. (AR 28.) Claimant argues that his injury was part of the reason why he was laid off from his job in March 2020, (Doc. 13 at 20), but the ALJ's conclusion that he was laid off due to the pandemic was rational and supported by substantial evidence. (*See* AR 674 ["Currently laid off d/t COVID-19 pandemic."], 741 ["lay off was due to Covid-19"], 746 ["pt. reported recent lay off from job due to Covid-19"], 750 ["Pt. reported recent lay off from EMPLOYMENT due to Covid-19"].) In addition, the ALJ could reasonably have concluded that Claimant's ability to work up until the COVID-19 pandemic, even with his injury, supported a finding of non-disability. *See Thomas*, 278 F.3d at 958–59 ("The ALJ may consider . . . when weighing the claimant's credibility . . . [his] work record . . . ." (citation omitted)). Because the ALJ's conclusion discounting Claimant's testimony about limitations is supported by substantial evidence, the ALJ's finding that Claimant met the income requirements for substantial gainful activity was harmless error.

### 4.    Daily Activities

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). But "[o]nly if the level of activity [is] inconsistent with Claimant's claimed limitations do daily activities have any bearing on Claimant's credibility." *Ferguson*, 95 F.4th at 1203 (second alteration in original) (quotation marks omitted). The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures

of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Id.* (citation omitted).

Here, the ALJ found that Claimant's testimony of "disabling limitations due to mental symptoms that reportedly resulted in problems with memory, concentration, and focus" was unpersuasive because Claimant "lived alone" and was able to engage in daily activities such as "personal care, managing medications, preparing simple meals, performing household chores, going out alone, shopping in stores, handling a savings account, and enjoying hobbies and interests, which include watching spo[r]ts on television." (AR 27.) But, on the other hand, the ALJ acknowledged that "[i]n a typical day the claimant tried to stay busy but did not do much besides watching television and spending time with his significant other" and had to "lie[] down during the day to relax [because] he had so many racing thoughts going on in his mind." (AR 26.)

Claimant argues that the ALJ did not make a finding that a "substantial part of a typical day was spent engaged in activities inconsistent with disabling limitations" and did not include reasoning concerning "the demands, frequency, or duration of those activities." (Doc. 13 at 21; Doc. 16 at 9.) Thus, he argues, the ALJ did not meet the "stringent test that requires specific, clear, and convincing reasons for rejecting claimants' symptom testimony." (*Id.*)

The Court agrees that the ALJ did not provide specific, clear, and convincing reasons, supported by substantial evidence, for discounting Claimant's symptom testimony based on his reported daily activities. As the ALJ found, Claimant "did not do much [in a typical day] besides watching television and spending time with his significant other." (AR 26.) Moreover, many of the daily activities the ALJ proffered in support of his conclusions are inconsistent with Claimant's actual testimony and not supported by other evidence regarding Claimant's daily activities. First, Claimant testified that he can only perform personal care "for the most part." (AR 56; *see also* AR 381 [ability to dress and bathe is made difficult by balance issues].) Second, Claimant testified that the meals he makes for himself are "microwaveable foods, something easier." (AR 56; *see also* AR 381 [stating

that he has a "Limited Ability to cook," he eats premade foods and cannot cook healthy meals since his injury, and a "Lack of Focus may cause me to burn down my home"].) Third, Claimant said that if he goes grocery shopping, he usually does so with his significant other, and he does not "usually pick out stuff because [he does not] really know how to shop." (AR 56; *see also* AR 382 ["I shop when I have someone available to take me."].) And, though the ALJ found that Claimant could "perform activities of daily living independently," Claimant testified that his significant other helps him with "[a]lmost everything . . . [for] daily living as far as going to a doctor's appointment, eating three meals a day, taking care of [himself] and all that kind of nature." (AR 58.) His significant other also helps him with shopping, preparing meals, and cleaning. (AR 60.)

The ALJ also did not make a "specific finding[] relating to . . . [daily activity] transferability," *Orn*, 495 F.3d at 639 (quotation marks omitted), nor did the ALJ explain how Claimant's testimony about his activities is inconsistent with his claimed limitations, *see Ferguson*, 95 F.4th at 1203; *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (holding the ALJ erred in finding that activities "performed in the manner that [the claimant] described[] [were] inconsistent with the pain-related impairments that [she] described in her testimony"). The Court is thus unable to affirm the ALJ's finding that these activities are inconsistent with Claimant's claimed limitations. *See, e.g.*, *Ferguson*, 95 F.4th at 1203 (stating that a claimant "need not vegetate in a dark room to qualify for disability" (quotation marks omitted)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be 'utterly incapacitated' in order to be disabled." (citation omitted)). It was thus legal error for the ALJ to discount Claimant's testimony on the basis of his activities of daily living.

The Court nevertheless finds that the ALJ's error was harmless because the ALJ supported his decision to discount Claimant's testimony with other grounds, including numerous references to medical records and other record evidence conflicting with Claimant's testimony, and these were clear and convincing reasons for discounting Claimant's testimony and were supported by substantial evidence. (AR 27–29.) The Court

thus declines to reverse the ALJ's decision on this ground.  *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[S]everal of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record."), *superseded on other grounds by regulation as stated in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022); *Pruett v. Comm'r of Soc. Sec. Admin.*, 2025 WL 33148, at *4 (D. Ariz. 2025) ("Although the ALJ erred in using Pruett's daily activities in the testimony rejection analysis, the error was harmless because the discrediting was otherwise supported by the objective medical evidence . . . .").

### C.    Remand

The ALJ's failure to adequately explain how and why he discounted Beecham's and McCarthy's opinions based on the consistency factor under 20 C.F.R. § 404.1520.c(b)(2) requires the Court to vacate the decision denying Claimant benefits.  *See Lambert*, 980 F.3d at 1278 ("Because the ALJ did not provide enough reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence, we cannot treat the error as harmless." (quotation marks omitted)).

Ordinarily, if the Court reverses an ALJ, the Court remands to SSA for further proceedings.  *Garrison*, 759 F.3d at 1019.  Claimant requests that the Court apply the "credit-as-true rule," which would result in the immediate award of benefits, as opposed to remand for further proceedings.  *Id.*  "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court."  *Revels*, 874 F.3d at 668 (alteration in original) (citation omitted).  The credit-as-true rule only applies if (1) the ALJ "failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; (2) the "record has been fully developed," such that there are no "outstanding issues that must be resolved before a determination of disability can be made" and "further proceedings would not be useful"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand."  *Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir.

2023) (citations omitted); *Trevizo*, 871 F.3d at 683 (citation omitted).

This is not an instance in which the credit-as-true rule applies. Further proceedings would be useful for the ALJ to explain his findings concerning the consistency factor with regard to Beecham's and McCarthy's opinions. The ALJ might again decide on remand that Claimant is not disabled. Thus, the Court will remand to SSA for further administrative proceedings. *See Carlisle v. Comm'r of Soc. Sec. Admin.*, 2025 WL 406737, at *5 (D. Ariz. 2025).

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **vacated and remanded** for further administrative proceedings.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 20th day of March, 2025.

Honorable Sharad H. Desai
United States District Judge